IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Amanda Ruiz and Marisela Arreola,<br><br>Plaintiffs,<br><br>v.<br><br>Owlet Baby Care, Inc.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (DKT. NO. 25)**<br><br>Case No. 2:19-cv-00252<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiffs Amanda Ruiz and Marisela Arreola filed this proposed class action against Defendant Owlet Baby Care, Inc., on April 12, 2019. *See* Dkt. No. 2 ("Compl."). On June 18, 2019, Defendant moved to dismiss all of Plaintiffs' claims. *See* Dkt. No. 25 ("MTD"). For the following reasons, Defendant's motion is granted in part and denied in part.

**I.**

The following facts are taken from the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendant sells the "Owlet Smart Sock" and the "Owlet Smart Sock 2" (collectively the "Smart Sock"). Compl. ¶ 1. The Smart Sock "uses pulse oximetry technology" that "has been miniaturized[,] made wireless," and incorporated into a sock that can be placed on a baby's foot. *Id.* ¶ 7 (citation and internal quotation marks omitted). It is intended to "track a baby's heart rate and oxygen levels" and to "notify parents if those levels fall outside the preset zone." *Id.* (citation and internal quotation marks omitted). Promising parents "peace of mind," Defendant markets the Smart Sock as an "accurate and reliable product[] [that] empower[s] parents with insights into the health and well-being of their infant in the home." *Id.* ¶ 8 (citation and internal quotation marks omitted).

Both Plaintiffs purchased Smart Socks but soon afterwards became dissatisfied with the product's accuracy and reliability. *See id.* ¶¶ 15–28. Plaintiff Ruiz purchased a Smart Sock for her child in November 2018. *See id.* ¶ 15. Despite "always follow[ing] [Defendant's] instructions for use," "within the first week" of her purchase "the Smart Sock alerted Plaintiff Ruiz to issues with her baby's vital signs on two occasions." *Id.* ¶ 17. "Both times she immediately brought her baby to a pediatrician who confirmed that the Smart Sock readings were inaccurate, and her baby's vital signs were all normal." *Id.* Prior to purchasing a Smart Sock, Plaintiff Ruiz experienced similar issues with a Smart Sock she had received as a gift, which gave two false readings within the first two weeks of use. *See id.* ¶ 16. Nonetheless, relying on Defendant's "representations and assurances regarding the Smart Sock's accuracy, including those made in response to [an article published in the Journal of the American Medical Association] questioning the Smart Sock's reliability" and "information provided on [Defendant's] official website," Plaintiff Ruiz purchased a Smart Sock, "expect[ing] the Smart Sock to accurately track her baby's oxygen saturation and heart rate levels" and believing that the gifted Smart Sock was "simply [ ] a defective unit." *Id.* ¶¶ 16–17.

Plaintiff Arreola purchased a Smart Sock for her child in October 2016. *See id.* ¶ 22. Like Plaintiff Ruiz, Plaintiff Arreola purchased her Smart Sock "[b]ased on [Defendant's] representations and assurances regarding the Smart Sock's functionality and reliability" and "expected the Smart Sock to accurately track her baby's oxygen saturation and heart rate levels." *Id.* ¶ 24. Despite following Defendant's "instructions for use at all times," Plaintiff Arreola twice noticed her daughter, who was wearing the Smart Sock, "turning purple." *Id.* ¶¶ 24–25. The first time, in November 2016, a pediatrician confirmed that "her daughter's oxygen levels were low"; the second time, in December 2016, "her daughter was immediately admitted to the ICU due to

low oxygen levels." *Id.* ¶ 25. The Smart Sock never alerted Plaintiff Arreola to her daughter's low oxygen levels on these occasions. *See id.* Defendant subsequently sent Plaintiff Arreola "a new 'beacon,' which is the part of the Smart Sock responsible for monitoring and alerting when vitals are abnormal." *Id.* Yet shortly thereafter, although Plaintiff Arreola "used the new beacon as directed," her "daughter was admitted to the hospital for low oxygen, which the Smart Sock again failed to detect and alert her to." *Id.*

Both Plaintiffs represent that "if [they] had known at the time of purchase that the Smart Sock contains inherent design flaws that cause, among other problems, frequent and unnerving false alarms throughout the night, inaccurate readings, and failure to detect and alert to abnormal oxygen levels and heart rates, [they] would not have purchased the Smart Sock." *Id.* ¶¶ 20, 27.[1] To demonstrate the existence and Defendant's knowledge of these alleged defects, Plaintiffs cite numerous complaints by other dissatisfied Smart Sock consumers who reported similar problems with accuracy and reliability on Defendant's website and social media. *See id.* ¶ 43. Plaintiffs

---

[1] Plaintiffs also allege that "the Smart Sock's battery and/or sensor located within the sock frequently causes burns to babies' feet while the sock is being worn as instructed." Compl. ¶ 38; *see also id.* ¶ 4 ("In addition, [Defendant] failed to disclose that the Smart Sock is prone to cause burns to babies' feet, even when the product is being used as instructed."). Given that neither Plaintiff alleges to have experienced this phenomenon, *see id.* ¶¶ 15–28, it is far from clear that either Plaintiff has standing or is a proper class representative to assert claims based on this alleged defect, *cf. Punian v. Gillette Co.*, No. 14-cv-05028, 2016 WL 1029607, at *15 (N.D. Cal. Mar. 15, 2016) (dismissing claims for violations of the California's Consumer legal Remedies Act and California's Unfair Competition Law and noting that plaintiff did not experience any of the alleged defects); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1171–74 (N.D. Cal. 2019). In all events, Plaintiffs have alleged only two unique complaints that the Smart Sock burned a child's foot. *See* Compl. ¶¶ 5, 38, 39 n.16. Out of all of the alleged consumer complaints as well as Plaintiffs' experiences—not to mention the apparent 150,000 Smart Socks sold, *see id.* ¶ 9—these two alleged complaints fall far short of plausibly supporting Plaintiffs' conclusory allegations that the Smart Sock is "prone to cause," *id.* ¶ 4, or "frequently causes," *id.* ¶ 38, burns to babies' feet. *See also Punian*, 2016 WL 1029607, at *11–15; *Iqbal*, 556 U.S. at 678 (noting that "'naked assertion[s],' devoid of 'further factual enhancement,'" do not suffice). The court thus finds that Plaintiffs have failed plausibly to allege such a defect.

claim that despite these numerous complaints, Defendant failed to disclose the alleged defects to them or to other members of the proposed class of Smart Sock purchasers. *See, e.g.*, *id.* ¶¶ 53, 57–112.

Plaintiffs assert five causes of action against Defendant on behalf of themselves and the proposed class. Plaintiffs assert that Defendant violated California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq. See* Compl. ¶¶ 57–85. Plaintiffs further assert that Defendant breached the implied warranty of merchantability under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 & 1791.1, and the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq. See* Compl. ¶¶ 86–107. Finally, Plaintiffs assert a claim for unjust enrichment. *See id.* ¶¶ 108–112.

## II.

Although Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,'" "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). *Twombly* and *Iqbal* thus make clear that "to enter the realm of plausible liability" and survive a motion to dismiss, a complaint must cross both "the line between the conclusory and the factual" and the line "between the factually neutral and the factually suggestive." *Twombly*, 550 U.S. at 557 n.5.

### III.

Underlying Plaintiffs' claims are their allegations that the Smart Sock is inaccurate, fails to detect and notify parents of their child's abnormal vital signs, and gives false alarms. *See, e.g.*, Compl. ¶ 13. Plaintiffs variously allege that these issues occur "regularly," "occasional[ly]," "sometimes frequent[ly]," "frequent[ly]," and "consistently." *E.g., id.* ¶¶ 3, 13, 20, 94. Beyond the vagueness and inconsistency with which Plaintiffs describe the incidence of these issues, Plaintiffs fail to allege sufficient factual content to support a reasonable inference that this incidence is (1) different from what a reasonable consumer would expect from a pulse oximeter and (2) indicative of a defect such that the Smart Sock is not fit for its ordinary use. For these and other reasons explained below, the court dismisses Plaintiffs' claims.

### A.

California's Consumer Legal Remedies Act (the "CLRA") "defines 27 'unfair methods of competition and unfair or deceptive acts or practices.'" *Shaeffer v. Califia Farms, LLC*, 258 Cal. Rptr. 3d 270, 277–78 (Cal. Ct. App. 2020) (quoting Cal. Civ. Code § 1770). Plaintiffs allege that Defendant committed three of these prohibited practices—namely, that Defendant "[1]

5

represented that [its] Smart Socks had characteristics and benefits that they do not have, [2] represented that [its] Smart Socks were of a particular standard, quality, or grade when they were of another, and [3] advertised [its] Smart Socks with the intent not to sell them as advertised." Compl. ¶ 61 (citing Cal. Civ. Code §§ 1770(a)(5), (7), & (9)). "An actionable representation may be (1) an affirmative representation, or (2) an omission if the omitted fact is (a) contrary to a material representation actually made by the defendant or (b) is a fact the defendant was obliged to disclose." *Shaeffer*, 258 Cal. Rptr. 3d at 278 (cleaned up); *see also Gutierrez v. Carmax Auto Superstores California*, 248 Cal. Rptr. 3d 61, 84 (Cal. Ct. App. 2018) (concluding that §§ 1770(a)(5), (7), & (9)—the three provisions of the CLRA that Plaintiffs rely on here— "proscribe material omissions in certain situations"). Plaintiffs represent that their CLRA claim is "premised not on affirmative misrepresentations, but rather on material omissions." Dkt. No. 26 ("Resp.") at 1; *cf.* Compl. ¶ 61 (alleging violations of the CLRA because Defendant "*fail[ed] to disclose* . . . the true and actual nature, quality, and characteristics of [its] Smart Sock") (emphasis added).

Omissions are actionable under the CLRA (1) "when the defendant is plaintiff's fiduciary," (2) "when the defendant has exclusive knowledge of *material* facts not known or reasonably accessible to the plaintiff," (3) "when the defendant actively conceals a *material* fact," and (4) "when the defendant makes partial representations that are misleading because some other *material* fact has not been disclosed." *Gutierrez*, 248 Cal. Rptr. 3d at 84 (emphasis added; citation and internal quotation marks omitted). Although Plaintiffs argue that the alleged omissions are safety defects and that such defects are "*per-se* material," Resp. at 9, the California Court of Appeals recently rejected this argument, holding that "there is no independent duty to

disclose such concerns," *Gutierrez*, 248 Cal. Rptr. 3d at 85. Rather, safety concerns must be disclosed only in the four scenarios just discussed. *See id.*[2]

Plaintiffs invoke the second, third, and perhaps the fourth of these scenarios, *see* Compl. ¶¶ 65–66, 78; Resp. at 9, in support of their contention that Defendant was required to disclose that the Smart Sock "gives frequent false alarms [and] fails to detect abnormal oxygen levels and heart rates," *id.* at 1. Each of these scenarios requires that the alleged omission be "material." *Gutierrez*, 248 Cal. Rptr. 3d at 84. "In the context of the CLRA, a fact is 'material' if a reasonable consumer would deem it important in determining how to act in the transaction at issue." *Id.*; *cf. Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 938 (C.D. Cal. 2012) ("Conduct that is 'likely to mislead a reasonable consumer' violates the CLRA.") (citations to California law omitted). Although "materiality usually is a question of fact," *Gutierrez*, 248 Cal. Rptr. 3d at 87, Plaintiffs must still allege sufficient factual content to support a reasonable inference that the omissions alleged here—that Defendant failed to disclose "that the Smart Sock gives frequent false alarms [and] fails to detect abnormal oxygen levels and heart rates," Resp. at 1—are material. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557 n.5, 570.

The court finds that Plaintiffs have failed to do so. To be sure, Plaintiffs allege in conclusory fashion that "[t]he facts Defendant concealed . . . are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase [Defendant's] Smart Socks or pay less." Compl. ¶ 67. But this court will not "'accept as true a legal conclusion couched as a factual allegation,'" for, as the Supreme Court has explained,

---

[2] To be sure, in *In re Apple Inc. Device Performance Litig.*, the District Court for the Northern District of California suggested that a defendant might be required to disclose an "*unreasonable* safety hazard" under the Ninth Circuit's interpretation of California law. 386 F. Supp. 3d at 1175–76 (emphasis added). This court finds the California Court of Appeals' analysis of California law both more authoritative and more persuasive than that of the Northern District (or the Ninth Circuit).

"Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 555).

And Plaintiffs fail to allege sufficient "factual enhancement" to provide plausible support for their "naked assertion" of materiality. *Twombly*, 550 U.S. at 557; *accord Iqbal*, 556 U.S. at 678. For instance, Plaintiffs fail to allege facts regarding the accuracy and reliability a reasonable consumer would expect from a comparable pulse oximeter, as well as how, if at all, that expectation differs from what Plaintiffs contend Defendant should have disclosed about the accuracy and reliability of its Smart Sock. Plaintiffs' assertion that the undisclosed facts were material because a reasonable consumer would have considered them important in deciding whether to purchase Smart Socks thus "'stops short of the line between possibility and plausibility.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Indeed, it is telling that one unsatisfied customer quoted in the Complaint wrote, "Pulse oximeters in the hospital also have false alarms all the time, not sure why I thought this would be any different." Compl. ¶ 43.d. Likewise, in its response to the article published in the Journal of the American Medical Association, Defendant quoted a pediatrics professor's statement that "'[a]ll pulse oximetry technology has false positives and false negatives.'" Dkt. No. 25-4 at 2. Significantly, Plaintiffs allege that Ms. Ruiz relied on this very response in purchasing the Smart Sock. *See* Compl. ¶ 17.[3]

---

[3] In determining whether a plaintiff satisfies the requirements of Rule 8, the court "may consider not only the complaint, but also the attached exhibits," *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011), the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Plaintiffs' allegations also leave Defendant and the court guessing at what they believe Defendant should have disclosed. Plaintiffs sometimes allege that problems with the Smart Sock's accuracy and reliability occur "regularly" or "consistently." *Id.* ¶ 3, 94. Elsewhere Plaintiffs variously describe the incidence of these problems as "occasional," "frequent," and even "sometimes frequent." *E.g.*, *id.* ¶¶ 13, 20. Even were the allegations consistent, moreover, all of these terms are vague and unhelpful. Absent greater specificity, it seems unlikely that a disclosure using such terms would provide a reasonable consumer important information—especially absent comparison with similar or other pulse oximeters, as discussed above.

In sum, Plaintiffs fail to allege what Defendant should have disclosed, what a reasonable consumer would have expected from a pulse oximeter, and whether there was a difference between the two. Plaintiffs have thus failed plausibly to allege material omissions, and their CLRA claim must therefore be dismissed. *See Punian v. Gillette Co.*, No. 14-cv-05028, 2016 WL 1029607, at *15 (N.D. Cal. Mar. 15, 2016) (dismissing an omissions claim for failing plausibly to allege "consumer expectations"); *cf. In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176–79 (N.D. Cal. 2019) (holding that plaintiffs failed to allege that a claimed battery defect was material where plaintiffs failed "to plead anything more than the usual battery aging process").

**B.**

Under the Song-Beverly Consumer Warranty Act, "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 289 (Cal. Ct. App. 2009) (cleaned up). "Such fitness

is shown if the product is in safe condition and substantially free of defects." *Id.* (citation and internal quotation marks omitted).[4] "Crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade." *Pisano v. Am. Leasing*, 194 Cal. Rptr. 77, 80 (Cal. Ct. App. 1983).

Here, Plaintiffs fail plausibly to allege that the Smart Sock is unfit for the ordinary purpose for which it is used. As discussed above, Plaintiffs offer no comparison of the accuracy and reliability of the Smart Sock with that of other pulse oximetry technology. Notwithstanding the alleged experiences of Plaintiffs and the other dissatisfied consumers quoted in the Complaint, Plaintiffs have thus failed plausibly to plead that the Smart Sock's alleged shortcomings arise from a defect in the Smart Sock. It is of course possible that false alarms or inaccurate readings are indicative of a design defect, but it is also possible that such failures reflect nothing more than the inherent limitations of pulse oximetry technology, as at least some of the materials quoted or referenced in the Complaint suggest. *See supra* p. 8. Without more, the court cannot determine whether a defect is a *plausible*—as opposed to merely *possible*—root of these alleged issues. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

---

[4] Defendant argues that this "broader standard" applies only in cases involving vehicles and that in other contexts a product does not breach the implied warranty of merchantability so long as it "possesses 'even the most basic degree of fitness for ordinary use.'" Dkt. No. 28 ("Reply") at 9 (quoting *Mocek v. Alfa Leisure, Inc.*, 7 Cal. Rptr. 3d 546, 549 (Cal. Ct. App. 2003)). Because the court finds that Plaintiffs have failed plausibly to allege a breach of the implied warranty even under the "broader standard" they invoke, *see* Resp. at 18, it applies that standard here and does not decide whether Defendant is correct that this standard is limited to cases involving vehicles.

plausibility of entitlement to relief.") (citation and internal quotation marks omitted); *cf. Pisano*, 194 Cal. Rptr. at 80. The court thus dismisses this claim.[5]

Because Plaintiffs have failed to state a claim under the Song-Beverly Consumer Warranty Act, the court dismisses their claim under the Magnuson-Moss Warranty Act as well. This federal statute "allows consumers to enforce . . . implied warranties in federal court, borrowing state law causes of action." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). The "disposition of the state law warranty claims" thus "determines the disposition of the Magnuson-Moss Act claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Indeed, Plaintiffs properly concede that their federal claim under this statute rises or falls with their state law warranty claim. *See* Resp. at 19 (citing *Clemens*).

## C.

California's Unfair Competition Law "provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200). Each of these three "'prongs'" provides an "independent ground for liability." *Shaeffer*, 258 Cal. Rptr. 3d at 276.

"The unlawful prong of the UCL 'borrows violations of other laws and treats them as unlawful practices,' which the UCL then 'makes independently actionable.'" *Backhaut*, 74 F. Supp. 3d at 1050 (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d

---

[5] It may be the case that "allegations showing an alleged defect that created a substantial safety hazard would sufficiently allege the [Smart Sock is] not 'fit for the ordinary purposes for which such goods are used' and, thus, breached the implied warranty of merchantability." *Gutierrez*, 248 Cal. Rptr. 3d at 75 (quoting Cal. Civ. Code § 1791.1(a)(2)). The court finds that Plaintiffs have not plausibly alleged such a defect, however. As the court has already found, Plaintiffs have failed plausibly to allege that the Smart Sock is "prone to cause" or "frequently causes" burns to babies' feet. *See supra* n.1. The court also finds that Plaintiffs' allegations that the Smart Sock "occasionally," "frequently," or even "consistently" fails to deliver its intended safety *benefits* do not support a reasonable inference that it "*create[s]* a *substantial* safety hazard."

527, 539–40 (Cal. 1999)). Plaintiffs allege that Defendant violated this prong because its conduct "constituted (a) [v]iolations of California's Consumers Legal Remedies Act; (b) [v]iolations of California's False Advertising Law," (c) [v]iolations of the Song-Beverly Consumer Warranty Act; and (d) [v]iolations of the Magnuson-Moss Warranty Act." Compl. ¶ 81. The court has already held that Plaintiffs have failed to state a claim under all but one of these statutes, and Plaintiffs make no other reference to the fourth—California's False Advertising Law—let alone plausible allegations that Defendant has violated this statute. Plaintiffs have thus failed to state a claim under the "unlawful" prong of the UCL.

Plaintiffs have also failed to state a claim under either the "unfair" prong or the "fraudulent" prong. "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (Cal. Ct. App. 2006). Plaintiffs neither plausibly allege nor argue that Defendant's activity meets this test in either the Complaint, *see* Compl. ¶¶ 72–85, or their response to the motion to dismiss, *see* Resp. at 16. The court accordingly concludes that Plaintiffs fail to state a claim under this prong.

"A fraudulent business practice is one which is likely to deceive the public." *McKell*, 49 Cal. Rptr. 3d at 239. As with CLRA claims, "[t]he determination . . . whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." *Id.* The "same standard" thus governs claims under both the CLRA and the fraudulent prong of the UCL. *Punian*, 2016 WL 1029607, at *5. As explained above, Plaintiffs fail to allege what a reasonable consumer's expectations of a pulse oximetry device would be, let alone whether these expectations would differ from what they believe Defendant should have disclosed. Plaintiffs

have thus failed plausibly to allege what the likely effect of Defendant's omissions would be on a reasonable consumer and have accordingly failed to state a claim under the "fraudulent" prong. Because Plaintiffs have failed to state a claim under any of the UCL's three prongs, their cause of action for violation of this statute must be dismissed.

### D.

Plaintiffs' claim for unjust enrichment is based on "Defendant's failure to disclose known design flaws." Compl. ¶ 110; *see also* Resp. at 20. But as discussed above, the court finds that Plaintiffs have failed to allege sufficient factual content to support a reasonable inference that the false alarms or inaccurate readings experienced by Plaintiffs were the result of "design flaws." The court thus dismisses this claim as well.

### IV.

Finally, the court rejects Defendant's argument that Plaintiffs' claims should be dismissed without leave to amend. *See* MTD at 21. Defendant argues that Plaintiffs "plead themselves out of court by identifying the very information they claim [Defendant] should have disclosed, on [Defendant's] website and available to the consuming public." *Id.* at 1 (emphasis omitted). The court, however, concludes that Plaintiffs may be able to amend their Complaint to allege sufficient factual matter to plausibly support their claims. For example, Plaintiffs may be able amend their Complaint so that it plausibly alleges what a reasonable consumer would have expected from a pulse oximeter like the Smart Sock, that that expectation differed from how the Smart Sock performs, and that Defendant failed to disclose this discrepancy. In addition, the court sees no reason at this stage of the proceedings to deny Plaintiffs the opportunity to attempt to cure the pleading deficiencies that it has identified. *Compare* Fed. R. Civ. P. 15(a)(2) (stating that "[t]he court should freely give leave [to amend] when justice so requires"), *with Bylin v.*

*Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (listing specific reasons that would justify denying leave to amend).

*   *   *

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. All of Plaintiffs' claims are **DISMISSED WITH LEAVE TO AMEND**. If Plaintiffs fail to seek leave to amend within 30 days, their claims will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED this 1st day of June, 2020.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge