IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMANDA RUIZ and MARISELA ARREOLA,<br><br>Plaintiffs,<br><br>v.<br><br>OWLET BABY CARE, INC.,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER<br>DENYING LEAVE TO AMEND<br>AND DISMISSING WITH PREJUDICE**<br><br>Case No. 2:19-cv-00252<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiffs Amanda Ruiz and Marisela Arreola filed this proposed class action against Defendant Owlet Baby Care, Inc., on April 12, 2019. *See* Dkt. No. 2. The court dismissed Plaintiffs' claims with permission to seek leave to amend on June 1, 2020. *See* Dkt. No. 34. Plaintiffs sought leave to file an amended complaint on July 1, 2020. *See* Dkt. No. 36. The court denies leave to amend and dismisses Plaintiffs' action with prejudice.

**I.**

The court's June 1, 2020, memorandum decision and order details Plaintiffs' allegations. *See* Dkt. No. 34. In their proposed amended complaint, Plaintiffs seek to make minor changes to these allegations.

First, Plaintiffs seek to omit their earlier allegations that Smart Socks cause burns to babies' feet. *See* Dkt. No. 36-2 at 2. Second, Plaintiffs seek to edit one Smart Sock review by omitting the reviewer's statement that "[p]ulse oximeters in the hospital also have false alarms all the time, not sure why I thought this would be any different." *Id.* at 23. Third, Plaintiffs seek

to edit their allegations regarding the frequency of Smart Sock false alarms to make them more consistent, removing words like "occasional" and "sometimes" and adding phrases such as "frequent and regular." *Id.* ¶¶ 3, 11.

Fourth, Plaintiffs seek to allege that "Owlet convinced consumers of the Smart Sock's accuracy and reliability by pointing to a single clinical study *performed on 11 adults*, 2 years *after* the release of the Smart Sock, to establish its accuracy." *Id.* ¶ 40 (emphasis in original). Plaintiffs seek to allege that this study has been "called into question in the August 2018 edition of the Journal of the American Medical Association." *Id*. Plaintiffs also seek to allege that Owlet's response to this article cited to the first study, and to a "second study that has not yet been released by Owlet but purportedly tested the Smart Sock alongside an FDA-cleared infant pulse oximeter (incorrectly referred to as FDA-approved by Owlet). Both sensors were apparently placed on 14 infants under non-motion conditions for up to 20 minutes." *Id.* (cleaned up). Fifth, Plaintiffs seek to allege that the Journal of the American Medical Association article questioning Smart Sock's reliability was "not publicly available" and that "Owlet made absolutely no disclosures regarding these findings and actively concealed the inaccuracies in the product." Dkt. No. 36-2 ¶ 15.

Sixth, Plaintiffs seek to add allegations comparing how Owlet's pulse oximeters are used with how other medical and non-medical pulse oximeters are used. Plaintiffs seek to allege that "[g]enerally, pulse oximeters are intended for non-invasive measurement of the arterial blood oxygen saturation and pulse rate and have been regularly used in hospitals and similar medical settings since the early 1990s," but that "unlike the Owlet Smart Sock, FDA-cleared pulse oximeters for infant use are not used on babies' feet, the sensors are hard-wired to the monitor, and, for healthy babies, are intended for use only to 'spot check' vital signs rather than for

consistent monitoring over long periods of time." *Id.* ¶ 37 (cleaned up). Plaintiffs also seek to allege that non-medical pulse oximeters intended for consumer use—such as the Smart Sock, Apple Watch, and FitBit—are not cleared by the FDA "for curing, treating, or preventing any disease or condition" but that the Smart Sock differs from other non-FDA approved "consumer products such as the Apple Watch and FitBit" because those products are "intended for wellness and exercise purposes, and most importantly, not intended for use on infants or to provide alerts for vital sign activity." *Id.* (cleaned up).

  Seventh, Plaintiffs seek to allege that despite these differences, "Owlet deliberately and misleadingly aligns itself with both medical grade devices and consumer wellness products, seemingly whenever it was convenient for sales." *Id.* ¶ 38 (cleaned up). Plaintiffs thus seek to allege that "Owlet released a 3-page 'Accuracy Report for the Owlet Smart Sock 2.0'" in October 2019 "that claims the Smart Sock 'passes stringent requirements applicable to medical devices.'" *Id.* ¶ 41. Plaintiffs also seek to allege that although "Owlet has stated that it is working on becoming a registered medical device and that it's applying for FDA clearance," the Smart Sock has not yet received FDA clearance. *Id.* ¶ 38 (cleaned up). And Plaintiffs seek to allege that Owlet has "not had to supply the types of clinical data that most pulse oximeters must go through in order to be marketed to consumers" *Id.* ¶ 39. Finally, Plaintiffs seek to allege that Owlet's representations led "consumers to reasonably expect the Owlet Smart Sock to be at least as accurate as hospital grade pulse oximeters" and that Owlet took advantage of "consumer expectations by their use of hospital grade and similar terminology in their advertisements." *Id.* ¶ 45 (cleaned up).

## II.

Plaintiffs may amend their pleading with "the court's leave," and "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). To survive dismissal, a complaint must tender more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (alteration in *Iqbal*). Rather, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

## III.

The proposed amended complaint asserts claims for violations of three California statutes: the Consumers Legal Remedies Act, the Song-Beverly Consumer Warranty Act, and the Unfair Competition Law. It also asserts a claim for violation of the federal Magnuson-Moss Act

and a claim for unjust enrichment. These are essentially the same claims asserted in the previous complaint and dismissed by the court. The court concludes that even if amended as Plaintiffs propose, all of the claims would still be subject to dismissal.

## A.

Plaintiffs seek to amend their claim that Defendant violated California's Consumers Legal Remedies Act. *See* Dkt. No. 36-2 ¶ 64 (citing Cal. Civ. Code §§ 1770(a)(5), (7), & (9)). This claim is not based on a products liability theory nor "on affirmative misrepresentations, but rather on material omissions." Dkt. No. 26 at 6. Under this statute, Defendant is liable only for omissions that are material, and a fact is material "if a reasonable consumer would deem it important in determining how to act in the transaction at issue." *Gutierrez v. Carmax Auto Superstores California*, 248 Cal. Rptr. 3d 61, 84 (Cal. Ct. App. 2018). Allegations that a device does "not function as well or as long as Plaintiffs would prefer" do not without more allege "a material omission to trigger [Defendant's] duty to disclose." *In re Apple Inc. Device Performance Litigation*, 386 F. Supp. 3d 1155, 1177 (N.D. Cal. 2019).

In dismissing this claim as alleged in Plaintiffs' first complaint, the court concluded that Plaintiffs failed "plausibly to allege material omissions" because they failed "to allege what Defendant should have disclosed, what a reasonable consumer would have expected from a pulse oximeter, and whether there was a difference between the two." Dkt. No. 34 at 9; *see also, e.g.*, *id*. at 8 (concluding that Plaintiffs had failed to allege "facts regarding the accuracy and reliability a reasonable consumer would expect from a comparable pulse oximeter, as well as how, if at all, that expectation differs from what Plaintiffs contend Defendant should have disclosed about the accuracy and reliability of its Smart Sock"). The proposed amended complaint does contain new allegations that distinguish medical pulse oximeters from consumer

products incorporating pulse oximeter technology. It also contains new allegations that distinguish how the Smart Sock is used from how medical pulse oximeters are used, on the one hand, and how consumer products such as Apple Watches and FitBits are used, on the other. But it contains no new factual allegations relating to differences in accuracy and reliability between medical pulse oximeters and consumer products incorporating pulse oximeter technology—let alone between medical pulse oximeters and the Smart Sock or between other consumer products incorporating pulse oximeter technology and the Smart Sock.

The proposed amended complaint does allege that "according to Owlet, the alarm thresholds on the Smart Sock are fixed at relatively conservative values in order to reduce false alarms and thus, reasonable consumers actually expect there to be less false alarms than pulse oximeters used in hospitals." Dkt. No. 36-2 at 45 (cleaned up). But the proposed amended complaint still does not allege any facts regarding what a reasonable consumer expects from other pulse oximeters, whether FDA-approved medical devices used in hospitals, or "consumer products incorporating pulse oximeter technology (i.e. Apple Watch, FitBit)." *Id.* ¶ 37.

Although the proposed amended complaint does not allege exactly what the wording of Defendant's disclosure should have been, it appears to allege that Defendant should have disclosed "the Smart Sock's frequent and unnerving false alarms, inaccurate readings, and complete failure to detect and alert to abnormal oxygen levels and heart rates." *Id.* ¶ 8 (alleging that this is "the information [Defendant] *does not* disclose to consumers" (emphasis in original)); *see also id.* ¶ 3 (alleging that the "material information" that "Owlet failed to disclose" was that "[t]he Smart Sock contains a defect or defects that cause it to provide frequent and regular false alarms" and "to fail regularly to detect abnormal oxygen levels and heart rates"). But Plaintiff fails to allege facts supporting a reasonable inference that the omission of such a disclosure was

6

material—because it is not clear what the disclosure means, and thus whether it differs from what a reasonable consumer would expect from a consumer product incorporating pulse oximeter technology.

In granting Defendant's motion to dismiss, the court explained:

> Plaintiffs' allegations also leave Defendant and the court guessing at what they believe Defendant should have disclosed. Plaintiffs sometimes allege that problems with the Smart Sock's accuracy and reliability occur "regularly" or "consistently." Elsewhere Plaintiffs variously describe the incidence of these problems as "occasional," "frequent," and even "sometimes frequent." Even were the allegations consistent, moreover, all of these terms are vague and unhelpful. Absent greater specificity, it seems unlikely that a disclosure using such terms would provide a reasonable consumer important information—especially absent comparison with similar or other pulse oximeters.

Dkt. No. 34 at 9 (cleaned up). Instead of providing "greater specificity," the proposed amended complaint seeks simply to provide greater consistency among the "vague and unhelpful" terms employed, removing terms and phrases that are less favorable to Plaintiffs' claims, such as "occasionally" and "sometimes frequent."

To be sure, the proposed amended complaint does provide specific allegations regarding the two named Plaintiffs' experiences with the Smart Sock. The proposed amended complaint alleges that Ms. Ruiz "received a new Owlet Smart Sock 2 . . . as a baby gift around August 2018, [and] . . . always followed Owlet's instructions for use. However, within the first two weeks of use" the Smart Sock "gave two [false] 'red' alerts, the most critical and immediate of the Smart Sock alarms," with the first alert indicating "that her baby had low oxygen" and the second "that her baby had low oxygen and abnormal heart rate." *Id.* ¶ 14. After these false alarms, Ms. Ruiz "conducted significant research regarding the product's accuracy" because "[a]ccuracy and reliability were incredibly important to [her] in deciding to purchase the Owlet Smart Sock." *Id.* ¶¶ 14–15. Satisfied by her research, Ms. Ruiz then "returned the First Smart

7

Sock 2 and subsequently purchased a new Smart Sock 2," and "within the first week" the new Smart Sock had two more false alarms. *Id.* ¶ 15.

As for Ms. Arreola, the proposed amended complaint alleges that she "purchased a new Owlet Smart Sock 1" after "thoroughly research[ing] the Smart Sock's reliability and functionality." *Id.* ¶¶ 20–21. The Smart Sock allegedly failed to alert Ms. Arreola of "her daughter's [low] oxygen levels" three times within a period of at least three months. *Id.* ¶ 23 (alleging three false negatives—one each in November 2016, December 2016, and "early 2017").

These allegations do not clarify what Plaintiffs mean by "frequent," "complete," and "regular" failures and inaccuracies—do they mean two inaccuracies in two weeks, two inaccuracies in one week, or three inaccuracies in three (or more) months? Absent greater clarity, it is impossible to compare the Smart Sock's performance with what a reasonable consumer would expect from pulse oximeter devices—even if Plaintiffs had alleged facts regarding such reasonable expectations, which they have not.

Apart from these concrete allegations, Plaintiffs quote selections from a number of online consumer reviews. But even though these reviews appear to be carefully edited and cherrypicked, they are far from consistent with each other.[1] Nor are they clear. Indeed, many of the reviews do not distinguish among false alerts ("red" alarms), alerts resulting from the

---

[1] The reviews are taken from OwletCare.com, from which Plaintiffs draw 31 reviews, and Amazon.com, from which they draw 28 reviews. Dkt. No. 36-2 at 22–32. Although the court does not rely on these facts in denying leave to amend, the court likely could take judicial notice that the reviews on which Plaintiffs rely are far from a representative sample—on OwletCare.com, the Smart Sock has more than 3,226 reviews, with 2,489 five-star reviews and an average rating of 4.6 stars. On Amazon.com, the version of the Smart Sock used by Ms. Ruiz has more than 5,250 ratings, with 4,013 5-star ratings, 1,658 5-star reviews, and an average rating of 4.5 stars. (Amazon no longer offers the version of the Smart Sock used by Ms. Arreola, so reviews for this version are no longer available.)

inability to get a good reading of the baby's vital signs because of movement or improper placement ("yellow" alerts), and internet connection issues ("blue" alerts). Nor do most of the reviews indicate whether the reviewers believe they are getting more false negatives or false positives than they would expect from medical pulse oximeters—although, as noted, Plaintiffs do seek to omit one reviewer's statement that "[p]ulse oximeters in the hospital also have false alarms all the time, not sure why I thought this would be any different." *Id.* at 23. In short, the reviews do not support a reasonable inference regarding what the Smart Sock's rate of false positives and negatives even is, let alone whether that rate differs from what a reasonable consumer would expect.

For all of these reasons, the court denies Plaintiffs' motion for leave to amend this claim.

**B**.

Plaintiffs also seek to amend their claim that Defendants violated the Song-Beverly Consumer Warranty Act, which requires that "consumer goods that are sold in retail in" California "be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 289 (Cal. Ct. App. 2009). "Crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade." *Pisano v. American Leasing*, 194 Cal. Rptr. 77, 80 (Cal. Ct. App. 1983).

The court held in its first opinion that "Plaintiffs fail[ed] plausibly to allege that the Smart Sock is unfit for the ordinary purpose for which it is used" because they "offer[ed] no comparison of the accuracy and reliability of the Smart Sock with that of other pulse oximetry technology." Dkt. No. 34 at 10. Once again, the proposed amended complaint does nothing to

add factual allegations that support a reasonable inference that the "false alarms or inaccurate readings are indicative of a design defect" as opposed to "reflect[ing] nothing more than the inherent limitations of pulse oximetry technology." *Id*. It thus fails to state a claim. For, as the Supreme Court has explained, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (cleaned up).

The court thus denies Plaintiffs leave to amend this claim. And because the "disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008), the court also denies Plaintiffs leave to amend their claim under the Magnuson-Moss Warranty Act.

## C.

Plaintiffs next seek to amend their claim that Defendant violated California's Unfair Competition Law, which "provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200).

This statute's first prong "borrows violations of other laws and treats them as unlawful practices, which the [statute] then makes independently actionable." *Id.* (cleaned up). Plaintiffs allege Defendant violated this prong by violating the Consumers Legal Remedies Act, the Song-Beverly Consumer Warranty Act, the Magnuson-Moss Warranty Act, and California's False Advertising Law. *See* Dkt. No. 36-2 ¶ 84. The court has already concluded that the proposed amended complaint fails to state a claim for any violation of the first three statutes. And the proposed amended complaint barely references California's False Advertising Law, let alone alleges any facts that could support a reasonable inference that Defendant violated this statute.

The statute's second prong prohibits business practices "which [are] likely to deceive the public," *McKell v. Washington Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (Cal. Ct. App. 2006), and is governed by the "same standard" as the Consumers Legal Remedies Act. *Punian v. Gillette Company*, No. 14-cv-05028-LHK, 2016 WL 1029607, *5 (N.D. Cal. Mar. 15, 2016). The court has already held that Plaintiffs fail to allege facts that meet this standard.

Finally, the statute's third prong prohibits a business practice if it "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell*, 49 Cal. Rptr. 3d at 240. Plaintiffs seek to add allegations that

> Defendant's acts, conduct, and practices were unfair because: a. the harm to consumers far outweighs the utility of Defendant's conduct, which is solely to increase Defendant's profits at the expense of consumers; b. consumers could not reasonably avoid harm, as they [were] unaware of the inaccuracy and unreliability of the Smart Sock prior to purchase; and c. public policy, especially as it relates to vulnerable members of society like infants as set forth in federal and state consumer protection and warranty statutes.

Dkt. No. 36-2 ¶ 85. The court concludes that these proposed allegations amount to little more than "conclusory statements" and "naked assertions devoid of further factual enhancement" and thus do not suffice to state a claim. *Iqbal*, 556 U.S. at 678 (cleaned up).

Because the proposed amended complaint fails to state a claim under any of the Unfair Competition Law's three prongs, the court denies Plaintiffs leave to amend their claim that Defendant violated this statute.

### D.

Plaintiffs final claim is for unjust enrichment for "Defendant's failure to disclose known design flaws." Dkt. No. 36-2 ¶ 114. The court has already concluded that the proposed amended complaint fails to allege sufficient factual content to support a reasonable inference that the false

11

alarms and inaccurate readings experienced by Plaintiffs were the result of design flaws as opposed to the inherent limitations of pulse oximeter technology. The court accordingly denies Plaintiffs leave to amend this claim.

### IV.

For the foregoing reasons, Plaintiffs' motion for leave to file the proposed amended complaint is **DENIED**. In a docket text order following the court's first decision, the court stated that "[i]f leave to amend all claims is denied" because "the proposed amendments fail to cure the deficiencies the court has identified, . . . the action will be dismissed with prejudice." Dkt. No. 35. Plaintiffs' action is accordingly **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED this 3rd day of August, 2021.

BY THE COURT:

_____

Howard C. Nielson, Jr.
United States District Judge